UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SPRINT SPECTRUM L.P., SPRINTCOM, INC. and SPRINT/UNITED MANAGEMENT COMPANY,

        Plaintiffs,

  -against-

AT&T INC.,

        Defendant.
-----------------------------------------------------------X

Case No.

**DECLARATION OF HAL PORET**

I, Hal Poret, make this declaration under 28 U.S.C. § 1746 and state that:

1. I am President of Hal Poret, LLC, a survey research and consulting firm that specializes in survey research, including advertising perception surveys. I submit this declaration in support of Plaintiffs Sprint Spectrum L.P.'s, SprintCom, Inc.'s, and Sprint/United Management Company's (collectively "Sprint") motion brought by order to show cause for a temporary restraining order and a preliminary injunction against Defendant AT&T Inc. ("AT&T"). I have personal knowledge of the following facts and, if called upon as a witness, could and would competently testify thereto.

2. I have personally designed, supervised, and implemented more than 1,000 consumer surveys concerning the perception and opinions of consumers. More than 300 of these surveys have involved consumer perception with respect to advertising, and more than 500 have been conducted online. I have personally designed numerous studies that have been admitted as evidence in legal proceedings and I have been accepted as an expert in survey research on numerous occasions by U.S. District Courts, the Trademark Trial and Appeal Board, and the

National Advertising Division of the Council of the Better Business Bureau. A copy of my curriculum vitae is included as Appendix to my expert report, discussed below.

3. Attached hereto as <u>Exhibit 1</u> is a true and correct copy of my expert report, dated February 4, 2019, titled "Survey to Assess Consumer Perception of AT&T Commercials Advertising 5GE."

4. My report describes a study I designed and conducted to test whether AT&T's use of the term "5GE" in its television and internet commercials (the "5GE Commercials") deceives consumers into believing that AT&T has a 5G wireless or equivalent network, or better.

5. Based on the results of this survey, as discussed below and in my report, it is my professional opinion that a remarkably high percentage of consumers are deceived by AT&T's advertising of "5GE" into believing that AT&T is offering AT&T customers a 5G network or better.

**Survey Design**

6. In order to reliably test whether AT&T's 5GE Commercials are likely to deceive consumers into believing that AT&T has a 5G wireless network, it was necessary to survey mobile phone service consumers who participate in decisions about which mobile phone service provider to use.

7. Because AT&T's 5GE Commercials are available on national television, as well as YouTube and other Internet sites for consumers to view nationwide, it was necessary and appropriate to include respondents throughout the United States.

8. The survey included three groups of respondents, or "cells." The first group, the Test Group, viewed an actual AT&T commercial titled "OK Coach," which contained the message "now with 5GE" at the end of the commercial. The use of "now with 5GE' in the "OK Coach commercial" is representative of other AT&T 5GE Commercials. Thus, there is no

2

reason consumer understanding of "5GE" would differ across the various commercials that similarly conclude with the reference to "5GE."  Accordingly, it is my opinion that the results for the OK Coach commercial are applicable to the other comparable uses of "5GE" in AT&T's advertisements.

9. The second group, the Control Group, viewed the "Ok Coach" commercial, except that it was altered to replace the false or misleading reference to "5GE" with the non-misleading statement "best performing 4G LTE Advanced."  It was necessary to include a Control Group to measure survey noise and account for the impact of demand effects on the survey responses.  As detailed in my report, this and the other control mechanisms I used confirm that the impact of demand effects on the level of survey noise were minimal, and that the results of the survey—which far exceeded the noise level—are not only reliable, but provide a conservative estimate of the deception created by AT&T's 5GE Commercials.

10. The third group, the Benchmark Group, viewed the "OK Coach" commercial, except that it was altered to replace "5GE" with "5G."  I used the Benchmark Group to provide an actual benchmark in order to measure how the response to AT&T's actual commercial differed, if at all, from the response to a commercial that stated "5G."

**Responses To Open-Ended Questions About The Meaning Of The 5GE Commercials**

11. When shown AT&T's 5GE Commercial and asked to respond to open-ended questions about the commercial's main message, or why consumers should choose AT&T's mobile phone service, a net[1] 35% of respondents incorrectly believed that AT&T has a 5G network.

---

[1] The percentages listed in this declaration reflect the net deception rates: the amount by which the percentage in the Test Group exceeds the percentage in the Control Group.  The actual percentage of respondents who were deceived was higher.

12. Select verbatim responses to the open-ended questions include:

   (a) "AT&T is the nation's best network and has 5 G"

   (b) "That at&t now has reliable 5g network available and it was implied that the other companies are not as reliable"

   (c) "AT&T now has 5G"

   (d) "AT&T has the best national 5G network-no almost good enough"

   (e) "The main message of the commercial was AT&T advertising their new 5G wireless service"

   (f) "That AT&T has 5G and is the best mobile network"

   (g) "AT&T is the nation's best network, now with 5G"

   (h) "AT&T has a 5G network"

   (i) "ATT has a 5G Nationwide Network.  Your cell provider should not be sleeping on the job, doing just ok"

   (j) "at&t is best and has 5g"

13. The responses to the initial open-ended questions alone, without considering the additional open-ended questions or the closed-ended questions, strongly demonstrate that AT&T's use of 5GE is misleading to a substantial percentage of consumers.  These responses also demonstrate that a significant percentage of consumers either do not notice the letter "E" in AT&T's "5GE," or perceive "5GE" to be the same as or better than 5G.

**Responses To Questions About The Meaning Of 5GE**

14. A net 35.5% of respondents stated in response to a closed-ended question that, after watching the 5GE Commercial, they thought that the AT&T network advertised in the commercial was superior to AT&T's 4G LTE Advanced network.  This result corroborates the net deception rate in response to the open-ended questions and indicates that AT&T's

commercial generates a high level of deception.  Also highly significant is the net 37.5% of respondents in the Benchmark Group who likewise answered that the AT&T network advertised in the 5GE Commercial was superior to AT&T's 4G LTE Advanced Network, which demonstrates that consumers viewing the Test Commercial and the Benchmark Commercial responded in largely the same way and further corroborates the conclusion that AT&T's advertising of "5GE" is comparable to advertising "5G."

15. A net 36.5% of respondents answered in response to an additional closed-ended question that AT&T's network uses technology that is the same as or better than 5G technology. In the Benchmark Group, a comparable net 43.5% of respondents responded the same way.

16. Taking all of the closed-ended questions together, an astonishing net 54% of respondents identified the network advertised in AT&T's commercial as a 5G or equivalent network, or better.  This confirms the initial open-ended results and proves that an extremely high rate of consumers, even after adjusting for survey noise, are deceived by the 5GE Commercials into believing that AT&T is offering a 5G or equivalent network, or better.

**Responses To Questions About Use Of AT&T Phone On A 5G Network**

17. In addition, a net 43% of respondents (<u>59%</u> before deducting for noise) were deceived by AT&T's commercial into thinking that if they signed up for AT&T and purchased an AT&T phone now, it would be capable of running on a 5G network.  This result is comparable to the net 38.5% of respondents in the Benchmark Group who incorrectly believed the same thing.

5


I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 4, 2019
      Sleepy Hollow, NY

*Hal Poret*

Hal Poret