**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

| | |
|---|---|
| SPRINT SPECTRUM L.P., SPRINTCOM, INC., and SPRINT/UNITED MANAGEMENT COMPANY, | : |
| | :   Case No. 19 CIV 1215 (VSB) |
| | : |
| | :   **AMENDED COMPLAINT** |
|      Plaintiffs, | : |
| | :   **JURY DEMAND** |
|   -against- | : |
| | : |
| AT&T MOBILITY LLC, | : |
| | : |
|      Defendant. | |

-----------------------------------------------------------X

       Plaintiffs Sprint Spectrum L.P., SprintCom, Inc., and Sprint/United Management Company (collectively, "Sprint"), by their attorneys, Frankfurt Kurnit Klein & Selz, PC, for their amended complaint against Defendant AT&T Mobility LLC ("AT&T"), allege as follows:

## NATURE OF THE ACTION

       1.     This is an action arising from AT&T's false advertising and deceptive acts and practices under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Sections 349 and 350 of the New York General Business Law.  AT&T has employed numerous deceptive tactics to mislead consumers into believing that it currently offers a coveted and highly anticipated fifth generation wireless network, known as 5G.  What AT&T touts as 5G, however, is nothing more than an enhanced fourth generation Long Term Evolution wireless service, known as 4G LTE Advanced, which is offered by all other major wireless carriers.

       2.     The significance of AT&T's deception cannot be overstated.  Following years of tremendous growth in both the number of data users and in the amount of data being consumed, consumers are now demanding wireless service with faster speeds, lower latency (*i.e.*, faster connectivity), and greater capacity (*i.e.*, the ability to accommodate more users) than current 4G LTE wireless service can deliver.  This is precisely what 5G is expected to deliver.  Sprint and its

competitors, including AT&T, are all striving to be among the first to market with a wireless 5G service that fulfills the promise of a network that can carry vast amounts of data at record speed and efficiency.

3.     Against this backdrop, Sprint is working toward deploying a true, standards-based wireless 5G mobile network in select cities in the coming months.  It has invested billions of dollars in network upgrades and has been coordinating with its vendors to provide wireless 5G services to 5G-enabled mobile devices.  Sprint expects to begin its 5G rollout in nine cities— including New York City—in 2019.

4.     AT&T, meanwhile, has sought to gain an unfair advantage in the race to 5G by embarking on a nationwide advertising campaign to deceive consumers into believing that its existing 4G LTE Advanced network is now a 5G network.  AT&T calls this "new" network, "5GE."

5.     But calling its network "5GE" (or "5G E" or "5G Evolution") does not make it a 5G network and instead deceives customers into believing it is something that it is not.  The truth is that the network AT&T advertises as "5GE" offers consumers *the same service* as its 4G LTE Advanced service, which was already available to AT&T customers and has been deployed by all four national carriers.[1]  This technology is indisputably not 5G.  Adding an "E" or the word "Evolution" to 5G does not mitigate the deception.  AT&T is advertising its network as "5G" and consumers wrongly believe that AT&T is offering 5G technology.

6.     AT&T's deceptive "5GE" campaign is an extraordinary promotional effort that is just beginning to flood the marketplace, including through: (1) a nationwide television and internet advertising campaign falsely and misleadingly stating that AT&T offers its wireless

---

[1] Sprint, AT&T, Verizon and T-Mobile all offer 4G LTE Advanced service where available.

service on a 5G network; (2) a software update that will change the screens of mobile phones and tablets operating on the AT&T 4G LTE Advanced network to indicate falsely that these devices are connected to a 5G network; and (3) other digital content falsely marketing AT&T phones as 5G phones capable of connecting to a 5G network.

7.      By making the false claim that it is offering a 5G wireless network where it offers only a 4G LTE Advanced network, AT&T is attempting to secure an unfair advantage in the saturated wireless market.  AT&T's false and misleading statements deceive consumers into believing that AT&T now operates a 5G wireless network and, through this deception, AT&T seeks to induce consumers to purchase or renew AT&T's services when they might otherwise have purchased Sprint's services.

8.      Sprint and AT&T are direct competitors in the wireless service industry.  AT&T's attempt to increase its strong position in the wireless market through an aggressive and widespread false advertising campaign threatens Sprint's business and goodwill.  It harms consumers by holding out AT&T's services as more technologically advanced than Sprint's and enticing consumers to switch wireless service providers (or remain AT&T subscribers) under false pretenses.  AT&T's behavior violates federal and state laws governing false advertising and deceptive acts and practices, and must be immediately enjoined.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court has supplemental jurisdiction over Sprint's state-law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to Sprint's Lanham Act claim that they form part of the same case or controversy.

10.     This Court has personal jurisdiction over AT&T pursuant to CPLR §§ 302(a)(1)-
(2).  AT&T transacts business in New York, including without limitation, by maintaining stores
in New York where it sells mobile phones, tablets, and access to its wireless network to
consumers who reside in New York, by providing consumers who reside in New York with
access to its wireless and other networks, by maintaining a website that is accessed by consumers
who reside in New York, by shipping products to New York, and by advertising its products and
services to consumers who reside in New York.  AT&T also has committed tortious acts within
New York by falsely advertising to consumers in this state that AT&T provides a 5G wireless
network in New York when it does not.

11.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of
the events giving rise to Sprint's claim occurred in the Southern District of New York.

## PARTIES

12.     Plaintiff Sprint Spectrum L.P. is a corporation organized under the laws of
Delaware, with its principal place of business located at 6200 Sprint Parkway, Overland Park,
Kansas 66251.  Sprint Spectrum L.P. operates portions of Sprint's wireless network in various
areas of the United States.

13.     Plaintiff SprintCom, Inc. is a corporation organized under the laws of Kansas,
with its principal place of business located at 6200 Sprint Parkway, Overland Park, Kansas
66251.  SprintCom, Inc. operates portions of Sprint's wireless network in various areas of the
United States.

14.     Plaintiff Sprint/United Management Company is a corporation organized under
the laws of Kansas, with its principal place of business located at 6200 Sprint Parkway, Overland
Park, Kansas 66251.  Sprint/United Management Company manages Sprint's marketing and

advertising campaigns, including those campaigns associated with the rollout of Sprint's wireless 5G network.

15.     Upon information and belief, Defendant AT&T Mobility LLC is a limited liability company organized under the laws of Delaware with its principal place of business located at 1025 Lenox Park Blvd. NE, Brookhaven, GA 30319.

## FACTUAL ALLEGATIONS

16.     Sprint and its predecessor and affiliated entities have been providing telephone services to United States consumers for 120 years.  During that time, Sprint has worked to offer pioneering technology and the most advanced equipment to its customers.  Sprint served 54.5 million connections as of December 31, 2018 and is widely recognized for developing, engineering, and deploying innovative technologies, including instant national and international push-to-talk capabilities and a global Tier 1 Internet backbone.  Today, Sprint's legacy of innovation and service continues with an increased investment to improve quality across its network and a commitment to offer consumers a standards-based 5G wireless network, beginning in 2019.

17.     As a result, Sprint has earned significant recognition for its many innovations. For example, Sprint received a Leading Light Award from Light Reading for the "Most Innovative 5G Strategy," for the company's approach in using its 2.5 GHz spectrum and Massive MIMO 5G technology to deploy a 5G network.  Additionally, Mobile Breakthrough has recognized Sprint with awards for outstanding mobile products in 2018.  Sprint's innovative Massive MIMO solution was also selected as "Commercial 5G Solution of the Year," among many other accolades Sprint has received.

### *The Wireless Industry*

18.     The wireless industry is extremely saturated with consumers.  The vast majority of American consumers currently have mobile phones and already receive their wireless service from one of the Tier 1 service providers—Sprint, AT&T, Verizon, and T-Mobile—or from other established and emerging competitors.

19.     These companies compete vigorously for new customers, who are predominantly existing customers of their competitors being asked to switch service providers.  Consequently, Sprint and AT&T, among others, also market extensively to their existing customers, with the goal of convincing those customers to remain.

20.     Network quality is an extremely important component of competition in the wireless industry and wireless service providers market their products on the basis of performance metrics such as speed, coverage, and technology features.

21.     In light of the highly saturated market, any perceived advancement in technology or in the capabilities of a service provider's wireless network can give that service provider a significant competitive advantage over other wireless companies that can last for years.

### *5G: The Next "Generation" of Networks*

22.     The international body that formulates industry standards for wireless cellular technology is known as the Third Generation Partnership Project ("3GPP").  Each major step forward in wireless cellular technology is known as a "generation," and each official publication of new industry standards issued by 3GPP is called a "Release."  The fourth generation wireless technology known as Long Term Evolution, or 4G LTE, was first introduced in 3GPP Release 8. 3GPP Releases 10, 13, and 14 describe 4G LTE Advanced technologies for increasing the

capacity and speed of 4G LTE networks, including carrier aggregation,[2] 4×4 MIMO,[3] and 256 QAM.[4]  Today, each of the four Tier 1 wireless service providers currently operate on a wireless network that offers these 4G LTE Advanced specifications in available markets.

23.     More recently, 3GPP issued Release 15, which contains the first standards for the fifth generation of wireless technology, known as 5G.  Release 15 includes wireless enhancements offering faster speeds, decreased latency, and increased network capacity.  In particular, Release 15 describes a new air interface between mobile devices and cell towers that supports multiple different types of subcarrier spacing (instead of the one type of subcarrier spacing supported by 4G LTE).  This allows for more flexible deployments covering a wider range of services and the use of additional spectrum in bands that have never before been used for commercial data traffic, which in turn will significantly increase capacity.  Additionally, Release 15 defines an advanced version of traditional MIMO technology, called Massive MIMO, that uses multiple transmitters and receiving in a minimum 16x16 array for delivering higher capacity, spectral efficiency, and faster speeds.

---

[2] In general terms, "carrier aggregation" refers to the increase in bandwidth available when multiple bands of spectrum are bonded together to create wider channels and produce more capacity and faster speeds on capable devices.  Essentially, it creates a wider lane that allows more traffic to travel at higher rates.

[3] "MIMO," or "multiple input multiple output," is an antenna technology that refers to the use of multiple antennas at the source (or transmitter) and multiple antennas at the destination (or receiver) of data.  MIMO allows the sending and receiving of more than one data signal simultaneously over the same radio channel by exploiting multipath propagation.  An increased number of antennas at the source and destination results in fewer data transmission errors and higher transmission speeds.

[4] "256 QAM" or "256 quadrature amplitude modulation" is a technique that increases the amount of data that can be transmitted in any given time over a given amount of bandwidth, which results in faster data speeds and more efficient use of this bandwidth.

24.     5G networks are expected to perform better than 4G LTE Advanced networks. 5G promises new levels of innovation and progress to connect people, places, and billions of things consumers do with super-fast speed and ultra-reliable wireless connectivity.  Customers will experience a significant performance shift from 4G to 5G, with full-length HD movies downloading in seconds instead of minutes and graphic-heavy videos and high-speed games playing without delays, buffering, hiccups, or lag-time.

25.     Importantly, 5G networks and the mobile devices that consumers use to access the 5G networks will be drastically different from the current 4G LTE networks and associated devices.  For example, consumers will need new 5G-enabled mobile phones and tablets that have faster processors and more antennas than those used in 4G LTE devices.  Moreover, wireless service providers must equip cell towers with 5G-enabled radios and additional antennas.  And those carriers that will use an extremely high frequency millimeter wave spectrum will have to install more cell sites to provide broad and contiguous 5G coverage.  The transition will be the most drastic upgrade in mobile wireless technology in nearly a decade.

### *The Race to 5G*

26.     Currently, there are no 5G-enabled mobile phones or tablets available for sale or lease to consumers.  No service provider has finished upgrading all of its cell towers with the requisite 5G radios to allow broad, contiguous 5G network access as consumers travel from tower to tower in individual markets—let alone across the country.  Nor has any service provider released the software necessary for future 5G devices and 5G cell towers to talk to each other.

27.     5G networks are, however, on the horizon—this year.  The first wireless service providers to offer customers the ability to connect their mobile phones and tablets directly to a mobile 5G network can expect significant growth in new customers and retention of existing customers.

28.     Sprint, like AT&T, is developing its 5G network, including working closely with original equipment manufacturers to design 5G mobile phones and tablets and upgrading its cell tower hardware.  It recently completed the world's first over-the-air 5G data transmission using 2.5 GHz and Massive MIMO on Sprint's live commercial network, marking a significant milestone on its path toward launching wireless 5G service.  Sprint expects to offer its first 5G mobile phone in the first half of 2019, with additional devices expected soon thereafter.  Indeed, Sprint is currently positioned to be an early—and possibly the first—provider of a wireless 5G network with 5G-enabled mobile phones and has announced launch plans for 5G coverage in nine cities—including New York City—in early 2019.

### *AT&T Deceptively Claims to Offer 5G Technology*

29.     AT&T has yet to deliver a contiguous mobile 5G network or release a 5G-enabled mobile phone or tablet capable of connecting directly to a 5G network.  Nor has AT&T made it possible for its wireless customers to experience the added benefits of a nationwide mobile 5G network.

30.     Yet, in late December 2018, AT&T initiated a nationwide advertising campaign targeting consumers in New York and elsewhere, announcing the launch of a "5GE" or "5G E" service on its wireless network.  On occasion, AT&T also calls this service "5G Evolution."

31.     AT&T's advertising is false and misleading.  It deceives consumers into believing that AT&T's mobile devices operate on a 5G network when, in truth, those "5GE" devices operate on the same 4G LTE Advanced network that those AT&T customers were already using.  AT&T's "5GE" network is a 4G LTE Advanced network, just like the networks of Sprint and the other major wireless service providers, none of which are mischaracterizing their 4G LTE Advanced networks as 5G.

32.     Put differently, the technological features that AT&T touts as "5GE" do not make its 4G LTE Advanced network a 5G network.  Rather, these features are merely enhancements to its existing 4G LTE network.

33.     The 5GE advertising campaign involves many components across different media.  For one, AT&T released a series of television commercials, including in New York, claiming that "AT&T is America's best wireless network."  The advertisements conclude with a voiceover stating, "Now with 5GE," along with the following image:



34.     Copies of certain versions of these advertisements can be found here:

https://www.ispot.tv/ad/IZTU/at-and-t-wireless-ok-sushi (as of Feb. 7, 2019);

https://www.ispot.tv/ad/IZfM/at-and-t-wireless-ok-machanic (as of Feb. 7, 2019);

https://www.ispot.tv/ad/IZ6J/at-and-t-wireless-ok-tattoo-parlor (as of Feb. 7, 2019);

https://www.ispot.tv/ad/IZ6C/at-and-t-wireless-ok-baby-sitter (as of Feb. 7, 2019);

https://www.ispot.tv/ad/IZ6U/at-and-t-wireless-ok-surgeon (as of Feb. 7, 2019).[5]

---

[5] Following the filing of the original Complaint, AT&T modified the language in some of its 5GE Claims to replace the "E" with the word "Evolution" on some of the graphic images depicted here.  AT&T has also modified the voiceover in certain advertisements to state: "Now with 5G Evolution, the first step to 5G."  The use of the phrase "5G Evolution" in the modified advertisements nevertheless remains false and misleading, as alleged herein.  Moreover, AT&T appears to be publicizing both the original versions of the 5GE Claims and the slightly revised versions.

35.     AT&T also posted a series of advertisements on the internet, which are accessible to consumers nationwide, including in New York, with the same deceptive message, stating that "AT&T IS THE NATION'S BEST NETWORK – NOW WITH 5GE":



Other advertisements contain a voice-over announcing that "AT&T is the nation's best network now with 5GE," while the following screen is displayed:



Immediately below the internet commercial, AT&T repeats this message, stating: "Get the best, not just ok.  AT&T is the nation's best network, now with 5GE*."

36.     Copies of certain versions of the internet commercials available on YouTube can be found here: https://www.youtube.com/watch?v=9KRKocnevc4 (as of Feb. 7, 2019);

https://www.youtube.com/watch?v=GjMx-b3uk6k (as of Feb. 7, 2019);

https://www.youtube.com/watch?v=jFzLwmVWGC0 (as of Feb. 7, 2019); and

https://www.youtube.com/watch?v=V4Ceds8diZc (as of Feb. 7, 2019).

37.     AT&T has promoted its commercials and other aspects of its 5GE advertising

campaign on its social media accounts as well, including to New York consumers.

38.     In addition, AT&T has updated its website to advertise "5GE" and "5G

Evolution" mobile devices, even though those devices do not possess the requisite hardware or

software to connect to any 5G network.  *See* Exs. A, B.

39.     AT&T has recently announced another part of this deceptive campaign: a

software update to mobile phones and tablets connected to its network across the nation,

including in New York, which will change the "LTE" service icon on the devices to read "5G E."

While initially only appearing on certain types of mobile devices, AT&T has just announced that

this deceptive "5G E" icon will also appear on Apple iPhones—the most popular mobile phones

in the country—which will impact several million additional consumers.  *See* Ex. C.

40.     The actual network on which these mobile devices operate, however, is the *same*

*4G LTE Advanced network that the consumer was already using.*  The only reason for the

software change, therefore, is to deceive consumers into believing that they are now operating on

a 5G network—and convince them to remain with AT&T, or convince others to purchase

AT&T's services.  Upon information and belief, the recent "software updates" pushed to the

devices of consumers accessing AT&T's wireless 4G LTE Advanced network did not make any

other notable changes to AT&T's customers' mobile devices, other than to change the "LTE"

icon to the misleading "5GE."

41.     This phone screen advertising ploy is particularly deceptive.  As pictured below,

the "E" in this designation is set-off from and distinctly smaller than the "5G," making it likely

that consumers will mainly notice the "5G" when viewing their mobile devices.  *See* Ex. A.



42.    AT&T's advertisements are a transparent attempt to influence consumers' purchasing decisions by deceiving them into believing that AT&T's network—because it claims to be a 5G wireless network—is more technologically advanced and of higher quality than those of other wireless service providers, including Sprint.  But AT&T's "5GE" network is not, in fact, a 5G wireless network, nor does AT&T sell a single 5G-enabled mobile phone or tablet.

43.    The network that AT&T has falsely labeled "5G E" (or, occasionally, "5G Evolution") is actually its existing 4G LTE network with 3GPP 4G LTE Advanced enhancements.  AT&T's own website confirms as much, stating that AT&T's "5G E" or "5G Evolution" network is its "existing LTE network" with LTE Advanced features like "carrier aggregation," "4×4 MIMO," and "256 QAM."  *See* Ex. A.

44.    Indeed, AT&T's Chief Technology Officer admitted that 5GE is nothing more than a 4G LTE Advanced network, stating "We're laying the 5G network foundation with 5G Evolution and LTE-LAA.  In technology terms, *that means we're upgrading cell towers with*

*LTE Advanced features* like 256 QAM, 4x4 MIMO, and 3-way carrier aggregation."  *See* Ex. D

(emphasis added).

45.     Additionally, AT&T's network coverage map confirms that AT&T offers wireless

service on only 3G, 4G, and 4G LTE networks.  *See* Ex. E.

46.     AT&T's claims of offering 5GE (or "5G E" or "5G Evolution") wireless service

are literally false and/or misleading.

### *AT&T's False and Misleading Advertising Has Deceived Consumers*

47.     AT&T's deceptive advertising already has been widely recognized by the media

as a falsehood that is likely to confuse consumers and lead them to believe that AT&T offers a

5G network to its mobile device customers, when it does not.

48.     For example, in an article titled "AT&T decides 4G is now '5G,' starts issuing

icon-changing software updates," *ArsTechnica* states, "Calling these LTE technologies '5G' is

ridiculous and seems designed only to mislead consumers into thinking AT&T's network is

somehow better than the competition's."  *See* Ex. F.

49.     Similarly, in an article titled "AT&T doubles down on its 5G fib," *Engadget*, a

known and respected technology blog, recognizes that selling AT&T's 4G LTE Advanced

network "as 5G is both inaccurate and potentially confusing to people who might incorrectly

believe they have 5G-capable phones. . . . [Consumers may] buy LTE phones now without

realizing that proper 5G hardware is just around the corner."  *See* Ex. G.

50.     According to an analyst at eMarketer, as reported by *AdAge*, AT&T's statement

that it has a "5Ge network . . . is misleading and a marketing ploy to get out in front of the

competition."  *See* Ex. H.

51.     Other AT&T competitors have also recognized the impropriety of AT&T's behavior and have been outspoken critics of its false advertising, calling AT&T's 5GE, among other things, "Fake 5G."

52.     Significantly, a survey of wireless consumers commissioned by Sprint determined that AT&T's "5GE" advertising is likely to deceive a remarkably high percentage of consumers into believing that AT&T has a network that uses 5G technology or better.  Indeed, among other compelling results, *54% of consumers* (even after deducting for survey noise) mistakenly believed, based on AT&T's 5GE claims, that AT&T's "5GE" network is the same as or better than a 5G network, and 43% of consumers (59% before deducting for noise) wrongly believed that if they were to purchase an AT&T phone today it would be capable of running on a 5G network.

53.     Upon information and belief, AT&T launched its deceptive and misleading advertising campaign to deceive consumers into believing that AT&T is superior to its competitors because it offers its wireless customers access to a 5G network.  Indeed, in response to widespread criticism of what has been broadly characterized in the media as outright deception, AT&T Communications CEO John Donovan told an audience at the Consumer Electronics Showcase, one of the industry's top annual events: "If I now occupy beachfront real estate in our competitors' heads, that makes me smile. . . . Every company is guilty of building a narrative of how you want the world to work.  And I love the fact that we broke our industry's narrative two days ago, and they're frustrated and gonna do what they're gonna do."  Ex. I.  Tellingly, referring to its 5GE advertising as a "narrative of how you want the world to work" reveals yet again that AT&T's 5GE claims are not based on accepted 5G standards, but are designed to reshape perception about their 4G LTE Advanced technology.

**_Sprint Is Being Irreparably Harmed_**

54.     AT&T's deceptive and misleading advertisements have harmed Sprint and the general public, and will continue to do so unless AT&T is enjoined.

55.     AT&T is causing irreparable harm to Sprint's goodwill and ability to increase sales by robbing Sprint of the opportunity to market its _legitimate_ early entry into the 5G network space.

56.     To execute the deployment of its genuine 5G network, Sprint has undertaken significant and costly 5G hardware upgrades to its 4G LTE network, including by installing Massive MIMO antenna deployments and 5G radios in the cities where it plans to launch 5G. And, because currently available mobile devices lack the processors and antennas necessary to connect to a wireless 5G network, Sprint has also partnered with original equipment manufacturers in developing 5G-enabled consumer mobile devices.  When these hardware upgrades are complete and its 5G-enabled devices are on the market, Sprint will only have to complete a simple software update to activate a 5G network in those areas where it has invested and deployed 5G-capable equipment, including New York.

57.     AT&T's deception guts Sprint's opportunity to reap the full commercial benefits of Sprint's 5G network launch that it has been developing for years at enormous expense.  By falsely communicating that it has robust 5G coverage today, AT&T's false advertising strikes at the heart of Sprint's own costly and calculated 5G business strategy focused around launching legitimate 5G technology imminently.  And, by falsely labeling its 4G LTE Advanced coverage as "5GE," AT&T threatens to irrevocably alter consumers' perception of what a true, standards-based 5G network (and its superior performance) looks like, as well as which of the carriers is offering such service at what time.

58.     Indeed, AT&T's deception causes consumers to erroneously perceive AT&T as having a robust 5G footprint, when it does not.  Additionally, once AT&T eventually launches true, standards-based 5G service, the use of the "5G ᴇ" icon, in particular, will obfuscate the network flip-flop between AT&T's 4G and 5G services that consumers find frustrating.

59.      Further, consumers' experience with AT&T's "5GE" technology—which is identical to, and thus provides no real benefit over, existing 4G LTE Advanced technology—will temper enthusiasm for real 5G, thereby further diminishing the value of Sprint's 5G rollout.

60.     AT&T's false and misleading statements are also irreparably harming Sprint by inducing consumers, including New York consumers, to purchase AT&T's services or continue to purchase AT&T's service instead of Sprint's on the false premise that AT&T is offering a 5G wireless network.

61.     Upon information and belief, potential purchasers of Sprint's wireless services, including potential purchasers located in New York, have been deceived into, and will continue to be deceived into, purchasing AT&T's products instead of Sprint's, or continuing to purchase AT&T's products instead of Sprint's when they otherwise would have changed service providers.  As a result, these consumers have purchased wireless services from Sprint's direct competitor rather than Sprint.

62.     Sprint estimates that AT&T's improper conduct has already caused Sprint significant lost sales and, if not enjoined, will continue to do so.

63.     Moreover, upon information and belief, AT&T has already reaped and, unless its acts are enjoined, will continue to reap the benefits of its false and misleading advertisements in significant revenues and increased sales.

64.     AT&T's unlawful acts also have harmed consumers, including New York consumers, who have been duped into thinking they are purchasing access to a 5G wireless

network, when they are actually accessing the exact 4G LTE Advanced network that AT&T offered before calling it a 5G network.

65.     Finally, AT&T's false claims disparage Sprint's technology with no factual basis to do so.

66.     In an attempt to minimize the harm, Sprint wrote to AT&T on January 4, 2019 demanding that AT&T stop its false and misleading activity, including by immediately removing its deceptive advertising from the market and ceasing its false and misleading claims to offer a "5G E" wireless network.  On January 16, 2019, AT&T responded to Sprint, unequivocally denying Sprint's request and refusing to alter its deceptive conduct.

## FIRST CAUSE OF ACTION
### (Violation of Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))

67.     Sprint repeats and incorporates by reference the allegations contained in Paragraphs 1 through 66 above as if fully set forth herein.

68.     AT&T's conduct set forth above constitutes false advertising because it contains false and misleading representations and descriptions that are likely to mislead, or have misled, consumers about the nature, characteristics and quality of AT&T's products and/or Sprint's products, and are likely to cause, or have caused, consumers to falsely believe, among other things, that AT&T's products are superior to Sprint's products, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.     AT&T is willfully, knowingly, and intentionally making false representations and descriptions of its products, and intends to continue making such false representations and descriptions in its advertising unless enjoined by this Court, so as to deceive, mislead and confuse consumers into believing that, among other things, AT&T's products are superior to Sprint's products.

18

70.     AT&T's false and/or misleading statements have a tendency to deceive a substantial portion of AT&T's intended audience of potential purchasers and, upon information and belief, these statements have actually deceived consumers.

71.     AT&T's false and/or misleading statements are material, in that they are likely to influence consumers' purchasing decisions and/or describe an inherent quality or characteristic of AT&T's products.

72.     AT&T's products are sold in interstate commerce and its false and misleading statements have been disseminated nationwide.

73.     By reason of and as a direct and proximate result of AT&T's unlawful acts and practices, AT&T has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Sprint, for which there is no adequate remedy at law, and for which Sprint is entitled to injunctive relief.

74.     By reason of AT&T's unlawful acts and practices, including the false and misleading statements set forth herein, Sprint has suffered, is suffering and will continue to suffer damage to its business, reputation and goodwill, and the loss of sales and profits Sprint would have made but for AT&T's acts, in an amount to be determined at trial.

75.     Additionally, AT&T has received revenue in the form of sales of new and renewed subscriptions to its wireless services caused by these false and misleading statements, in an amount to be determined at trial.

76.     The aforesaid acts and conduct of AT&T are, and unless enjoined will continue to be, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77.     Sprint continues to be irreparably harmed by AT&T's wrongful conduct, for which it has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (Violation of Section 349 of the New York General Business Law)

78.     Sprint repeats and incorporates by reference the allegations contained in Paragraphs 1 through 77 above as if fully set forth herein.

79.     As set forth above, AT&T is engaging in deceptive practices through false and misleading statements in its consumer-oriented advertising.

80.     AT&T's deceptive acts and practices are consumer oriented in part because they are displayed prominently in AT&T's television and internet commercials and on AT&T's consumer-facing website and social media accounts, and on the screens of consumers' mobile phones and tablets.  Therefore, AT&T's deceptive acts and practices potentially affect the purchasing decisions of wireless consumers.

81.     AT&T's deceptive acts and practices are material, as they are likely to mislead a reasonable consumer acting reasonably under the circumstances.

82.     AT&T's deceptive acts and practices affect the public interest in New York because, upon information and belief, consumers located in New York have suffered injury by purchasing AT&T's products in reliance on AT&T's deceptive acts and practices.

83.     By reason of and as a direct and proximate result of AT&T's deceptive acts and practices, AT&T has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Sprint, for which there is no adequate remedy at law, and for which Sprint is entitled to injunctive relief.

84.     By reason of AT&T's unlawful acts and practices, Sprint has suffered, is suffering and will continue to suffer damage to its business, reputation and goodwill, and the loss of sales and profits Sprint would have made but for AT&T's acts, in an amount to be determined at trial.

85.     Additionally, AT&T has received revenue in the form of additional sales caused by its deceptive acts and practices, in an amount to be determined at trial.

86.     The aforesaid acts and conduct of AT&T are, and unless enjoined will continue to be, in violation of Section 349 of New York's General Business Law.

87.     Sprint continues to be irreparably harmed by AT&T's wrongful conduct for which there is no adequate remedy at law.

**THIRD CAUSE OF ACTION**
**(Violation of Section 350 of the New York General Business Law)**

88.     Sprint repeats and incorporates by reference the allegations contained in Paragraphs 1 through 87 above as if fully set forth herein.

89.     As set forth above, the deceptive acts and practices at issue concern AT&T's advertisement activity.

90.     By reason of and as a direct and proximate result of AT&T's deceptive acts and practices, AT&T has caused, is causing, and, unless such acts and practices are enjoined by the Court, will continue to cause, immediate and irreparable harm to Sprint, for which there is no adequate remedy at law, and for which Sprint is entitled to injunctive relief.

91.     By reason of AT&T's unlawful acts and practices, Sprint has suffered, is suffering and will continue to suffer damage to its business, reputation and goodwill, and the loss of sales and profits Sprint would have made but for AT&T's acts, in an amount to be determined at trial.

92.     Additionally, AT&T has received revenue in the form of additional sales caused by its deceptive acts and practices, in an amount to be determined at trial.

93.     The aforesaid acts and conduct of AT&T are, and unless enjoined will continue to be, in violation of Section 350 of New York's General Business Law.

94.     Sprint continues to be irreparably harmed by AT&T's wrongful conduct for

which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Sprint respectfully requests that this Court enter a judgment:

(a)     Finding AT&T has violated Section 43(a) of the Lanham Act (15 U.S.C.
        § 1125(a)) and Sections 349 and 350 of the New York General Business Law;

(b)     Preliminarily and permanently enjoining and restraining AT&T from using the
        designation "5GE," "5G E," or "5G Evolution," or any designation containing
        "5G," in any and all advertisements, in any form whatsoever, for its wireless
        network and mobile devices, including on the screens of mobile devices
        connected to its wireless network, unless and until the wireless network that
        AT&T advertises as "5GE," "5G E," or "5G Evolution," or any designation
        containing "5G," complies with 3GPP 5G standards;

(c)     Awarding damages in an amount to be determined at trial, including, but not
        limited to, disgorgement of profits and costs for corrective advertisement;

(e)     Awarding pre-judgment and post-judgment interest, to the fullest extent allowable
        at law or in equity, on all damages;

(f)     Awarding costs and disbursements of this action, including attorneys' fees; and

(g)     Granting such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Sprint hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated:  New York, New York
          March 8, 2019

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:  ___*/s/ Craig B. Whitney*_____
Craig B. Whitney
Kimberly M. Maynard
Lily Roos

488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
cwhitney@fkks.com
kmaynard@fkks.com
lroos@fkks.com

*Attorneys for Plaintiffs Sprint Spectrum L.P.,
SprintCom Inc., and Sprint/United Management
Company*