UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SPRINT SPECTRUM L.P., SPRINTCOM, :
INC. and SPRINT/UNITED : Case No. 19 Civ. 1215 (VSB)
MANAGEMENT COMPANY, :
 :
 :
       Plaintiffs, :
 :
   -against- :
 :
AT&T MOBILITY LLC, :
 :
       Defendant. :
-----------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN
# SUPPORT OF SPRINT'S MOTION FOR PRELIMINARY INJUNCTION

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney
Edward H. Rosenthal
Kimberly M. Maynard
Lily Roos
William C. Lawrence
Viviane Scott
Nicole Bergstrom
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175
cwhitney@fkks.com
erosenthal@fkks.com
kmaynard@fkks.com
lroos@fkks.com
wlawrence@fkks.com
vscott@fkks.com
nbergstrom@fkks.com

*Attorneys for Plaintiffs Sprint Spectrum L.P., SprintCom, Inc. and Sprint/United Management Company*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.  SPRINT HAS ESTABLISHED THAT IT WILL BE IRREPARABLY HARMED BY AT&T'S 5GE CAMPAIGN ................................................................. 2

II. SPRINT HAS DEMONSTRATED THAT IT WILL SUCCEED ON THE MERITS ........................................................................................................................ 6

    A. AT&T's 5GE Claims Are Both Literally and Impliedly False .............................. 6

    B. AT&T's 5GE Claims Are Material ......................................................................... 9

III. AT&T'S DEFENSES ARE UNAVAILING ................................................................. 10

    A. Sprint's Advertising is Distinct from AT&T's False Advertising ....................... 12

    B. AT&T Mischaracterizes Sprint's Public Relations Efforts to Distract from its Own Deceptive Behavior ................................................................................. 12

IV. AT&T CANNOT SHOW ANY PLAUSIBLE HARDSHIP THAT WOULD RESULT FROM AN INJUNCTION ............................................................................ 13

CONCLUSION ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cablevision Sys. Corp. v. Verizon N.Y. Inc.*,
  119 F. Supp. 3d 39 (E.D.N.Y. 2015) ..................................................................................8

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
  843 F.3d 48 (2d Cir. 2016)...................................................................................................7

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
  690 F.2d 312 (2d Cir. 1982)............................................................................................5, 6

*Danone, US, LLC v. Chobani, LLC*,
  No. 18 Civ. 11702, 2019 WL 760040 (S.D.N.Y. Jan. 23, 2019)..........................................6

*Euro-Pro Operating LLC v. Euroflex Ams.*,
  No. 08 Civ. 6231, 2008 WL 5137060 (S.D.N.Y. Dec. 8, 2008)...........................................3

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002)...........................................................................................11, 12

*ImOn, Inc. v. ImaginOn, Inc.*,
  90 F. Supp. 2d 345 (S.D.N.Y. 2000)..................................................................................12

*Johnson & Johnson v. GAC Int'l, Inc.*,
  862 F.2d 975 (2d Cir. 1988).................................................................................................5

*Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*,
  285 F. Supp. 2d 389 (S.D.N.Y. 2003)..................................................................................5

*Magnet Commc'ns LLC v. Magnet Commc'ns, Inc.*,
  No. 00 Civ. 57462001, WL 109865 (S.D.N.Y. Sept. 19, 2001) ........................................11

*Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,
  960 F.2d 294 (2d Cir. 1992).................................................................................................7

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014).................................................................................................2

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*,
  962 F. Supp. 2d 514 (S.D.N.Y. 2013)..................................................................................8

*Reckitt Benckiser Inc. v. Motomco Ltd.*,
  760 F. Supp. 2d 446 (S.D.N.Y. 2011)..................................................................................3

*Schick Mfg., Inc. v. Gillette Co.*,
  372 F. Supp. 2d 273 (D. Conn. 2005) ................................................................................ 11

*Specialty Minerals, Inc. v. Pluess-Staufer AG*,
  395 F. Supp. 2d 109 (S.D.N.Y. 2005) ................................................................................ 12

*Telebrands Corp. v. Wilton Indus., Inc.*,
  983 F. Supp. 471 (S.D.N.Y. 1997) ....................................................................................... 9

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ..................................................................................................... 5

**Statutes**

Lanham Act ............................................................................................................................. 8, 11

## **PRELIMINARY STATEMENT**

Contrary to AT&T's arguments, Sprint is not seeking to deprive AT&T of the benefits of its investment of "▇▇▇▇▇ dollars in its enhancements to its wireless network on its path to the next generation of technology known as '5G.'" AT&T's Opposition Brief ("Opp.") at 1. And Sprint is not seeking to enjoin AT&T from touting its 2018 award for "Best US Network" or otherwise advertising its network speed or other improvements in customer experience. *Id.* Rather, Sprint is seeking to enjoin AT&T from falsely advertising that it has a nationwide 5G network, including by placing a 5G E icon on phones that are not currently (and never will be) able to connect directly to a 5G network.

5G is the next generation of wireless technology. It represents a transformational advance in the industry, as were the introductions of 3G and 4G before it. Like AT&T, Sprint has made an enormous investment in building a 5G network. Unlike AT&T, which lags behind Sprint in this new technology, Sprint is on the verge of actually introducing contiguous 5G service in key markets and, soon, to nearly 40 million people. This achievement is tremendously important to Sprint, which readily concedes that it has fallen behind its major competitors in the public perception of its network. Sprint's ability to be an early provider of 5G has the potential to improve this perception.

That opportunity is lost if AT&T is permitted to continue to advertise nationally that it has already achieved this goal. Consumers who see AT&T's 5GE commercials and/or experience the 5G E icon on their phones will believe that AT&T already has 5G technology. Some will think that, once again, Sprint is inferior to AT&T in its network technology and will be reluctant or unwilling to try Sprint's enhanced service. Others will experience AT&T's 5GE service (which is really just its 4G LTE Advanced technology) and be disappointed to discover that it does not offer the dramatic leap in speed, latency and connectivity that 5G promises.

Sprint's investment in its 5G network and its expectation that consumers will begin to see Sprint as a network technology leader will be completely undermined, and Sprint will be irreparably harmed if AT&T is permitted to continue.

AT&T's claims are plainly and demonstrably untrue: its 5GE / Evolution network is not 5G, but consumers unsurprisingly believe otherwise.  AT&T's primary argument in response—that consumers do not understand the technology underlying 5G—is a red herring.  AT&T's own expert found that consumers believe that 5G is different from 4G LTE in key ways, including in speed and latency.  Indeed, AT&T's multi-billion dollar 5GE campaign is designed to take unfair advantage of consumers' interest in gaining access to the next generation of wireless technology by deceiving consumers that they can get 5G coverage nationwide from AT&T.  Nowhere is this more apparent than in AT&T's use of a 5G E icon on its phones when consumers are *not connected to a 5G network*—a critical fact that AT&T does not even address in its opposition.  Nor is AT&T saved by its legally irrelevant defenses or its arguments regarding the cost and performance of its 5GE network.  AT&T should therefore be enjoined from claiming to a nationwide audience that it has 5G when it does not.

## ARGUMENT

### I.   SPRINT HAS ESTABLISHED THAT IT WILL BE IRREPARABLY HARMED BY AT&T'S 5GE CAMPAIGN

As Sprint established in its opening brief, the Second Circuit continues to apply a presumption of irreparable harm in cases where a challenged advertisement is inherently comparative.  *See* Sprint's Opening Brief  ("Brief" or "Br.") at 18-19 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 162 (2d Cir. 2007)); *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 261 (2d Cir. 2014) (affirming "use of the legal presumption in this

context" and holding that "[t]his is the case even if it is not a classic instance of comparative advertising where one company's advertisement mentions a competitor's product by name").

AT&T acknowledges that the presumption may survive in certain circumstances, but seeks to distinguish the cases that have applied it on the grounds that the wireless market is not "binary" (i.e., that there are more than two main participants). *See* Opp. at 16. No court in this Circuit, however, has affirmatively limited the presumption to situations where the market is binary. Rather, the presumption has been applied where "the plaintiff is an obvious competitor with respect to the misrepresented product." *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 453 (S.D.N.Y. 2011) (internal quotation omitted) (noting only that the parties are competitors in the rodenticide market); *see also Euro-Pro Operating LLC v. Euroflex Ams.*, No. 08 Civ. 6231, 2008 WL 5137060, at *5 (S.D.N.Y. Dec. 8, 2008) (parties were "competing manufacturers," not participants in a binary market).

Sprint and AT&T are "obvious competitors" in a market where 95% of American consumers have mobile phones and receive their wireless service from one of only *four* Tier 1 service providers. Fries Decl. ¶ 4. These providers vigorously compete both to retain their own customers and to attract new ones from their competitors. *Id.* ¶ 5; Declaration of David Christopher, dated April 9, 2019 ("Christopher Decl.") ¶ 7. Given the nature of the market and limited number of competitors, when AT&T claims that it is "the Nation's Best Network, now with 5G Evolution," it is understood that the other networks that are "just ok" are Sprint, T-Mobile and Verizon.[1]  PX-3-7.

---

[1] AT&T tries to separate its "best network" claim from its "Now with 5G E" claim—although they appear nearly in the same breath—suggesting that the comparative claims "have nothing to do with the alleged falsity." Opp. at 17. AT&T cites no supporting law to suggest that the false claim must be what is comparative. Moreover, AT&T made a concerted effort to link its "best network" and 5G Evolution claims in its advertising. Christopher Decl. ¶ 38.

3

Even without the benefit of a presumption, Sprint satisfies the standard in this Circuit for establishing irreparable harm. As noted in Sprint's Brief, to demonstrate irreparable harm, it need only show that it will "*probably* be harmed if defendant's advertising tend[s] to mislead consumers in the manner alleged." Br. at 19-20 (quoting *McNeil-PPC, Inc. v. Pfizer Inc.*, 351 F. Supp. 2d 266, 247 (S.D.N.Y. 2005) (emphasis added)). Here, the harm is more than probable, as Sprint will be robbed of the full benefit of its legitimate 5G launch. Br. at 20-23. As noted above, Sprint is poised to be an early leader in 5G technology, with the ability to offer 5G to millions of customers in a meaningful geographic footprint. Fries Decl. ¶ 21; Sullivan Decl. ¶ 18. AT&T is not. *See* PX-64 at -084 (███████████████████████████████████████ ███████████████████████████████████).

To compensate for this technological disadvantage, AT&T seeks to continue a national advertising campaign and use a 5G E icon on phones connected to its network, which suggests that AT&T is offering the same or a comparable service as Sprint—including in the nine major markets where Sprint will soon roll out its actual 5G. Bluhm Decl. ¶ 34. This will take the wind out of Sprint's 5G rollout by diverting from Sprint to AT&T customers who are eager to experience this new technology, and denigrating consumers' experience of 5G so that they will not be interested in Sprint's service. It also will greatly impair Sprint's ability to enhance the reputation of its network.

This injury is not "speculative" (Opp. at 20-21) simply because it hangs on future events. The race to 5G has been the primary focus of the wireless industry for more than two years now. *See*, *e.g.*, Christopher Decl. ¶ 16 (indicating that AT&T has been "looking toward the next generation of mobile wireless technology, known as 5G" since 2016); PX-2. AT&T, in fact, has recognized the benefit of being the first to market. *See* PX-67 (████████████████████ ██████████████████████████████████████). But it is Sprint

4

which is poised to be an early provider of actual, standards-based 5G (Bluhm Decl. ¶ 34), which may improve some of its difficulties with network quality and customer perception. *See* Opp. at 19, 20-21;[2] *see also* PX-2 at -157-164. AT&T's nationwide 5GE Claims threaten Sprint's ability to take advantage of this monumental opportunity.

This is precisely the sort of harm that cannot be remedied by monetary damages and warrants preliminary injunctive relief. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (value of future product was "a wholly unique opportunity" that was likely to "transform [plaintiff's] fortunes in the . . . field"); *see also Johnson & Johnson-Merck Consumer Pharm. Co. v. Procter & Gamble Co.*, 285 F. Supp. 2d 389 at 393 (S.D.N.Y.), *aff'd* 90 Fed. Appx. 8 (2d Cir. 2003) (where "false advertising is occurring at the inception of a new product launch . . . [c]orrecting the false impressions made on consumers will [] be difficult").

AT&T's argument that Sprint is "[u]nable to show lost sales" (Opp. at 20) is misplaced. As an initial matter, a plaintiff in a false advertising case "need not even point to an actual loss or diversion of sales." *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982), *superseded on other grounds as recognized in Johnson & Johnson v. GAC Int'l, Inc.*, 862 F.2d 975, 976 (2d Cir. 1988) (quoting *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190-91 (2d Cir. 1980)). Nevertheless, Sprint has shown that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Curran Decl. ¶ 7.

---

[2] The Court should disregard AT&T's refrain that Sprint's statements to the federal government of the difficulty it faces competing with AT&T and Verizon on a national level somehow mean that it cannot be irreparably harmed by AT&T's deceptive advertising. *See*, *e.g.*, Opp. at 3, 14. Were that the case, then any market leader could falsely advertise and argue that its competitors could not be harmed because they may not be able to compete in the future at the same level.

This is not ████████████████████████████ as AT&T suggests.  Opp. at 18 (quoting *Danone, US, LLC v. Chobani, LLC*, No. 18 Civ. 11702, 2019 WL 760040 (S.D.N.Y. Jan. 23, 2019)).³  As Mr. Curran explains, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Curran Decl. ¶ 7; *see also id.* ¶ 12.  It was also ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████ *Id.* ¶ 14.  As the Second Circuit observed, "[i]t is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement."  *Coca-Cola Co.*, 690 F.2d at 316.  This data, however, suggests that *Sprint is currently losing sales* as a result of AT&T's 5GE campaign.

## II. SPRINT HAS DEMONSTRATED THAT IT WILL SUCCEED ON THE MERITS

### A. AT&T's 5GE Claims Are Both Literally and Impliedly False

In its Brief, Sprint demonstrated that the 5GE Claims are literally false and misleading. Rather than argue that the 5GE Claims are literally *true*, AT&T asserts that they are ambiguous, and therefore are not subject to a literal falsity analysis.  *See* Opp. at 23-24.  AT&T's 5GE Claims, however, convey a single, false message: that AT&T is offering a 5G network.

AT&T argues that the 5GE Claims are ambiguous because "[t]he term 'Evolution' commonly means gradual progress towards something" and thus a consumer "could draw the entirely true and accurate reading that AT&T's network is evolving to 5G rather than the

---

³ *Danone* does not support AT&T.  There, "[t]he evidence presented at the preliminary injunction hearing indicates that Danimals' share of the overall yogurt market improved, and that Danimals itself had its second-best ever market share in its product class, during the month when Gimmies came to market."  *Id.*, at *12.  That is plainly *not* the case here.  *See* Curran Decl. ¶ 7.

6

allegedly false message that 5G Evolution is standards-based 5G." *Id*. at 24.  AT&T, however, did not choose "Evolution to 5G" as its network name.  It instead chose "5G Evolution" and "5GE."  The Court need only look at AT&T's commercials—or the 5G E icon which contains no mention of "evolution"—and use common sense to conclude that they convey an unambiguous message.  *See GAC Int'l,* 862 F.2d at 980, 982 (rejecting defendant's argument that "polysapphire" truthfully connotes a substance that is not a sapphire merely because it contains the prefix "poly" and noting that "where, as here, a 'coined' word incorporates words that do have preexisting meanings and connotations, we see no reason to allow any greater leeway for deceptiveness").  When the network indicators on consumers' phones switch from LTE to 5G E, the message is not ambiguous: you are now connected to a 5G network.  *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (when a message is unambiguous it can be deemed false and enjoined based on the Court's own interpretation of it).

AT&T's arguments on implied falsity fare no better.  In its Brief, Sprint presented compelling extrinsic evidence, in the form of two consumer perception surveys, showing that the 5G Evolution Claims convey the message that AT&T is offering a network that is 5G or the equivalent.  Br. at 13-15.  This, alone, establishes implied falsity.  *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp*., 960 F.2d 294, 298 (2d Cir. 1992) (the "proper role of consumer survey evidence" is to "determine what message was actually conveyed to the viewing audience").  AT&T attempts to discount Mr. Poret's surveys with its own survey expert, Itamar Simonson, but Dr. Simonson's criticisms ring hollow.  Mr. Poret's control adheres to accepted standards: it replaces the allegedly deceptive element with a truthful and non-misleading statement.  Further, Mr. Poret incorporated several safeguards to ensure that the survey results were fair.  *See, e.g.*, Poret Decl., ¶¶ 33, 41, 58-59.  Indeed, taking only the

7

results for the first open-ended question, a significant percentage of consumers were deceived into believing that AT&T is offering a 5G network. Poret Decl., ¶¶ 39, 62. Dr. Simonson's own surveys ask this same question and yield the same results. Supplemental Declaration of Hal Poret, dated April 17, 2019 ("Poret Supp. Decl.") ¶¶ 14, 52.

To distract from Sprint's clear evidence of deception, AT&T asserts that claims about 5G cannot mislead unless consumers understand 5G technology. None of the cases cited by AT&T, however, credit or use this legal theory. They instead assess falsity through the lens of what a reasonable consumer would understand the challenged advertisement to mean. *See Cablevision Sys. Corp. v. Verizon N.Y. Inc.*, 119 F. Supp. 3d 39, 51 (E.D.N.Y. 2015) (measuring falsity by asking how Verizon's claim "would commonly be interpreted" and whether that interpretation is true); *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 520 (S.D.N.Y. 2013) (falsity determined by the way "a reasonable ordinary consumer would interpret the phrase" at issue). Sprint thus need only show that consumers mistakenly believe that AT&T's 5GE network is a 5G network (and that such a claim is material, as discussed below), not whether they understand the technical underpinnings of 5G. Were AT&T's theory the law, advertisers could lie about the science or technology of their products with impunity, provided consumers do not fully understand that science or technology.

Accordingly, reasonable consumers interpret the phrase "Now with 5G Evolution" in AT&T's national advertising campaign to mean that AT&T now has 5G, and the appearance of 5G E on their phones to mean that they are connected directly to and experiencing a network that is 5G. The message communicated by the 5GE Claims is both false and misleading. Sprint has shown that it will prevail on its Lanham Act claim under either theory.

### B.     AT&T's 5GE Claims Are Material

AT&T's arguments contesting materiality are belied both by the evidence collected in this case and its own conduct.  As set forth in Sprint's opening brief (Br. at 16), a false or misleading statement is a material misrepresentation—meaning it is likely to influence purchasing decisions—if it pertains to an "inherent quality or characteristic" of the product.  *See*, *e.g.*, *Telebrands Corp. v. Wilton Indus., Inc.*, 983 F. Supp. 471, 475 (S.D.N.Y. 1997).  The generation of a network is indisputably an inherent quality or characteristic of wireless service, and AT&T's witnesses and documents readily concede that consumers make purchasing decisions based on it.  *See* PX-52 at 233:19-20; PX-88.

AT&T does not argue otherwise.  Instead, AT&T argues—once again—that "there is no evidence that consumers believe that '5G Evolution' refers to technology related to AT&T's offering of wireless services or, more importantly, that the underlying technology used to deliver the service . . . matters to consumers." Opp. at 27.  Yet, both AT&T's and Sprint's surveys confirm that consumers associate the generational number of the network with its technological capabilities.  Countless responses to Mr. Poret's open-ended survey questions show that consumers believe that both 5GE and 5G Evolution refer to the technology of AT&T's wireless service and the sophistication of its network.  When asked what the "main message or messages" of the 5GE / Evolution Commercials were and the reasons the commercials gave for choosing AT&T mobile phone service, consumers responded, for example:  "AT&T has the best network in the nation with 5G speeds," "AT&T is rated the best and now has 5G technology," "Having the best service with 5G technology," and "the network has 5G capability."  Poret Decl. ¶¶ 40, 63. Similarly, Dr. Simonson's survey showed that over 71% of consumers ascribe meaning to

9

5G and associate 5G with technological features such as speed and latency.[4]  Poret Supp. Decl. ¶ 4; *see also* DX-003 (Expert Report of Itamar Simonson, dated April 3, 2019 ("Simonson Report")) ¶ 93.

Finally, AT&T's own conduct confirms materiality.  In creating the 5GE brand, AT&T concluded that consumers understand that a fifth generation is superior to and newer than the fourth generation.  *See*, *e.g.*, PX-53 ( ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ); PX-88; PX-89.  The fact that AT&T deliberately researched and chose "5G Evolution," and now is refusing to give up that moniker, validates the materiality of that term.  Indeed, AT&T acknowledges that removing the name "5G Evolution" from its enhanced 4G LTE network would ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉  Opp. at 29 (emphasis added).  In other words, the value of its expensive technological upgrades lies primarily in AT&T's ability to market that network as "5G."  This is quintessential materiality.

## III.   AT&T'S DEFENSES ARE UNAVAILING

AT&T contends that Sprint unduly delayed in seeking injunctive relief (Opp. at 21-22), alleging that Sprint has "known about the basis for its claims" since as early as April 2017.  AT&T bases this assertion on a tweet from Sprint's former CEO, Marcelo Claure, and some general knowledge that AT&T was using the term 5GE or 5G Evolution in industry-directed press releases.  *Id.*; *see also* DX-098.

---

[4] In a separate survey, Dr. Simonson attempted to disprove materiality by finding no statistically significant difference in the likelihood that consumers would purchase AT&T's services whether they were referred to as "5G Evolution" or "LTE Advanced."  Opp. at 28.  That survey—which relies on an improper control and fails to ensure respondents noticed the 5G Evolution claim—shows nothing about whether consumers find 5G material.  Poret Supp. Decl. ¶¶ 44-51.

10

Sprint, however, was not required to bring suit based upon materials that were plainly not designed to impact general public perception. Rather, the "touchstone" for a false advertising claim under the Lanham Act is whether "the contested representations are *part of an organized campaign to permeate the relevant market*." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) (emphasis added); *see also Schick Mfg., Inc. v. Gillette Co.*, 372 F. Supp. 2d 273, 283 (D. Conn. 2005) (measuring plaintiff's eight-month delay in filing from "the initial airing of the allegedly false . . . advertising"). AT&T's industry-facing press releases announcing its launch do not constitute an "organized campaign." To accept AT&T's theory—that any mention of an objectionable phrase anywhere requires competitors to sue lest they be deemed to acquiesce to any future associated advertising campaign—would make little sense.

As AT&T has repeatedly acknowledged, its advertising campaign for 5GE/5G Evolution began in *late December 2018. See*, *e.g.*, PX-52 at 90:13-20; Opp. at 21. On January 4, 2019, Sprint wrote AT&T demanding it cease its "broad advertising and marketing effort" in support of 5GE. *See* Dkt No. 28-15. AT&T did not respond for approximately two weeks. *Id.* Sprint filed suit on February 7, 2019, a mere six weeks after the commencement of its campaign, including the announcement of the 5G E icon on Samsung phones, and only days after AT&T announced that the 5G E icon would appear on Apple iPhones. *See generally* Dkt No. 1.

AT&T fails to cite any support for its assertion that a preliminary injunction should be denied under these circumstances. Rather, most of the cases it cites are trademark cases that involve a much longer period prior to filing. Opp. at 21-22 (citing *Procter & Gamble Co. v. Ultreo*, 574 F. Supp. 2d 339, 354 (S.D.N.Y. 2008) (six-month delay); *Magnet Commc'ns LLC v. Magnet Commc'ns, Inc.*, No. 00 Civ. 57462001, WL 109865, at *1 (S.D.N.Y. Sept. 19, 2001)

11

(twelve-weeks in trademark case); *ImOn, Inc. v. ImaginOn, Inc.*, 90 F. Supp. 2d 345, 350 (S.D.N.Y. 2000) (eighteen weeks in trademark case).

### A. Sprint's Advertising is Distinct from AT&T's False Advertising

AT&T further alleges that Sprint is somehow guilty of the same misconduct because it uses the term "Next Gen Network" to describe its 5G buildout and the phrase "America's Mobile 5G Network" in industry-facing videos. *See* Opp. at 30; Fries Decl. ¶ 22. Putting aside whether Sprint's occasional and inconsistent use of the common phrase "Next Gen" could be characterized as advertising Sprint's network, this is not conduct that is "immediate[ly] and necessary[ily] related to the right in suit," and thus irrelevant to Sprint's motion. *See Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109 (S.D.N.Y. 2005) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)) (alterations in original).

AT&T's claim that Sprint itself is advertising 5G is unavailing. Unlike AT&T's 5GE Claims, the "advertising" AT&T identifies for Sprint's forthcoming true 5G network—not a "5G evolution" network—are two industry-facing promotional videos that have been removed from Sprint's YouTube page. More importantly, were never part of any nationwide, consumer-facing "organized campaign to permeate the relevant market." *Fashion* Boutique, 314 F.3d at 57.

### B. AT&T Mischaracterizes Sprint's Public Relations Efforts to Distract from its Own Deceptive Behavior

AT&T argues that Sprint, by virtue of its public relations efforts, is somehow responsible for the deception caused by the 5GE Claims. Opp. at 10-12. Whether and how Sprint publicized this lawsuit is, yet again, irrelevant to its motion for a preliminary injunction and AT&T's preexisting, unlawful behavior that caused it. Moreover, AT&T mischaracterizes Sprint's documents and testimony, which merely confirm that Sprint—like nearly all companies—uses press and media relations to further its lawful objectives. For example, Mr. Sullivan, did *not*

12

testify that Sprint's intent in filing was to "create[] negative publicity . . . conduct[] a survey . . . and then [] file[] this lawsuit." Opp. at 11. He instead acknowledged that while "[t]here are plenty of legal proceedings that generate publicity . . . [t]hat doesn't mean that those legal proceedings are part of a public relations plan." Supplemental Declaration of Craig B. Whitney dated April 17, 2019, Ex. 162 (PX-162) at 67:16-22.

## IV. AT&T CANNOT SHOW ANY PLAUSIBLE HARDSHIP THAT WOULD RESULT FROM AN INJUNCTION

AT&T claims of harm misconstrue the scope of Sprint's requested injunction. AT&T need not alter or undo any of the network "upgrades and equipment" on which it has allegedly spent ██████████████. Opp. at 28. Nor would innovation be "chilled" (*id.* at 29) by requiring AT&T to describe its network accurately. AT&T may still offer those upgrades to its consumers and it may continue to build a true 5G network. What it may not do is call a network that is not 5G a "5G" network. The balance of hardships thus strongly favors Sprint.

## CONCLUSION

For the reasons stated above and in Sprint's opening brief, Sprint respectfully requests that the Court grant Sprint's motion for preliminary injunction.

Dated: New York, New York
April 17, 2019

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: _____
Craig B. Whitney
Edward H. Rosenthal
Kimberly M. Maynard
Lily Roos
William C. Lawrence
Viviane Scott
Nicole Bergstrom
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone: (212) 980-0120
Fax: (212) 593-9175
cwhitney@fkks.com
erosenthal@fkks.com
kmaynard@fkks.com
lroos@fkks.com
wlawrence@fkks.com
vscott@fkks.com
nbergstrom@fkks.com

*Attorneys for Plaintiffs Sprint Spectrum L.P., SprintCom, Inc. and Sprint/United Management Company*